[Civil No. 1586.    Filed March 30, 1918.]

[171 Pac. 995.]

A. L. WASSON, Defendant, and G. C. KILBOURN, Intervener, Appellants, v. H. E. SMITH and JOHN B. WIGHT, Appellees.

1. SALES—ACTION FOR PRICE—TIME TO SUE.—As part of the price of cattle, the purchaser gave to plaintiffs a non-negotiable note due in six years, bearing on its face the indorsement, "part payment on 2,200 cattle guaranteed." The note was secured by a mortgage on the cattle. The bill of sale of even date contained a provision that

the parties of the first part guarantee at least 2,200 head of cattle, and that the second party assumes the obligation to tally out said cattle within two years. The mortgage contained a provision that if the property was disposed of, the debt should become due immediately. Civil Code, of 1913, paragraph 4143, provides that if the mortgagor sell or dispose of the mortgaged property without consent of the mortgagee, the latter shall be entitled to its possession and to have it sold for the payment of his debt, whether the same has become due or not. The purchaser, intervener in the present suit, with permission and consent of plaintiffs, sold and delivered the cattle to defendant, who agreed to complete the tally and assume payment of the note subject to the guarantee of 2,200 cattle. Before the tally was completed, defendant, without the permission or consent of plaintiffs, sold and delivered the cattle to a third party, and plaintiffs brought suit before the expiration of the two years allowed for the tally. *Held,* that by the sale of the cattle defendant and intervener waived their right to have a tally or thereafter question the guaranty.

[As to title and rights of the holder of a chattel mortgage after condition broken, see note in 96 Am. St. Rep. 682.]

2. TRIAL—WAIVER—QUESTION OF FACT.—While the question of waiver is ordinarily one of mixed law and fact, where the facts are all conceded, or where they compel but one conclusion or inference, there is no controversion of fact requiring a jury trial.

APPEAL from a judgment of the Superior Court of the county of Graham. G. W. Shute, Judge. Affirmed.

Mr. W. R. Chambers, Mr. S. H. Morrison, Mr. F. C. Knollenberg, Mr. George J. Stoneman and Mr. Fred Blair Townsend, for Appellants.

Mr. Jay Good and Mr. Lee N. Stratton, for Appellee.

ROSS, J.—The appellants prosecute this appeal from judgment on the pleadings. They are, respectively, defendant and intervener in an action brought by the appellees to recover a debt evidenced by a non-negotiable promissory note, and to foreclose a chattel mortgage given to secure the note. The note was part of the purchase price of certain cattle sold by appellees to intervener, Kilbourn, due six years from its date, June 23, 1915, and on its face had the indorsement, ''Part payment on 2,200 cattle guaranteed.'' The bill of sale from appellees to intervener, Kilbourn, of even date, contained the following provision:

"The parties of the first part guarantee unto the party of the second part at least 2,200 head of cattle under the several brands herein named, the agreed value being $40 per head; the second party assuming the obligation to tally out said cattle within two years from the date hereof, and the second party agreeing to employ a man to help tally out said cattle who is acceptable to the said first parties."

January 28, 1916, appellant Kilbourn, with the permission and consent of appellees, sold and delivered the cattle to appellant Wasson, who agreed to continue and complete the tally and assume the payment of the note sued on, subject, as he claims, to the guaranty of 2,200 head of cattle. Thereafter, and before the tally was completed, appellant Wasson, without the permission or consent of appellees, sold and delivered all of said cattle to a third party. The suit was brought before the expiration of the two years allowed to tally the cattle, and was originally instituted against appellant Wasson only, upon the theory that he had taken the place of Kilbourn in the performance of the terms and conditions of the contract growing out of the transaction between the appellees and Kilbourn, and, having breached the contract and waived the tally, was presently liable on the note and mortgage. On petition to the court, Kilbourn was permitted to intervene, whereupon he filed an answer to the complaint. Appellees thereafter filed an amended complaint, setting forth at great length, as is usual in equity cases, every conceivable phase of their case against the appellants. The separate amended answers of the appellants presented the same theory of defense, and consisted of denials, admissions, and pleas in bar. They also filed cross-complaints alleging damages, for which they asked judgment against appellees.

It would serve no useful purpose to encumber this opinion with the pleadings, and we, therefore, will state in our way as we proceed the admitted facts, and determine therefrom, as did the trial court, whether these facts require or demand a judgment for appellees.

In addition to the facts heretofore stated, we will say that the tally was not completed, and, therefore, by actual count, it was not determined whether the guaranty of 2,200 head of cattle was made good or not. It was the contention of appellees, and this contention was adopted by the court, that appellant Wasson, in disposing of the cattle without appellees'

consent, violated not only the terms of the mortgage, but also the laws of the state, and thereby matured the debt. One of the conditions of the mortgage is that, if the mortgagor shall himself dispose of the property, or dispose of it through any other person, the debt shall immediately become due. Paragraph 4131 of the Civil Code provides if the mortgagor sell or dispose of the mortgaged property without the consent of the mortgagee, the latter shall be entitled to its possession and to have it sold for the payment of his debt, whether the same has become due or not. This contention is not controverted by appellants, but they say it cannot be known what, if anything, is due appellees until a complete tally of the cattle is had, and that by the terms of the bill of sale from appellees to Kilbourn, the latter had two years from June 23, 1915, in which to make the tally. Kilbourn, however, seven months after he had acquired title, parted with the same, so that he no longer was in position to personally see to it that a tally was made. Wasson, the new owner, by consent of the mortgagees, had assumed the obligation and duty of tallying the cattle within the time limited fixed by the contract. In this regard, by mutual consent, he took the place of Kilbourn, whose dominion over the cattle had ceased with the passing of his title. Appellant Wasson, before the expiration of the two years, without the consent or knowledge of appellees, disposed of the cattle, thereby losing possession and control of them and placing it out of his power to ever tally them. It is evident that the right to have the cattle tallied or counted was placed in the contract for the sole benefit of Kilbourn. It could in no manner benefit appellees, for if the count showed more than 2,200 head of cattle, under the brands sold, they could claim no credit for the excess. If less than 2,200 were found, they would be required to make good the deficiency at the rate of $40 per head. This right to tally the cattle was wholly for the protection of Kilbourn, and, under the agreement as alleged, inured to his transferee, Wasson.

The answers of appellants are framed upon the theory that Wasson was to assume all the duties and obligations devolving upon Kilbourn under the latter's contract of purchase, and to have all the benefits and guaranties accruing to Kilbourn under said contract; that is, Wasson was to do the tallying and to have credit for any shortage at $40 per head, and that he assumed the payment of the note in suit with that

understanding, which was well known and agreed to by appellees. In short, appellants pleaded a complete novation of Kilbourn's contract except in the respect of Kilbourn's liability on the note and mortgage. If, then, Kilbourn would avoid this liability, or reduce it, it was up to him personally to make the tally or see that his transferee made the tally with a showing of a shortage in the guaranty.

The learned trial judge took the position that appellants, by disposing of the cattle to a third party without the consent of the appellees, waived all right to have a tally of the cattle, and we think properly so. That feature of the contract, as we have seen, was for their benefit. The right or duty to tally was exclusively theirs. They could waive it if they chose to do so or, while the cattle were in their possession and control, they had the unrestricted power to proceed with the tallying. The appellees reserved no right in themselves to tally, the only stipulation in their behalf being that the appellants would employ ''a man to help tally out said cattle who is acceptable to said first parties.'' Appellant Wasson surrendered his power and dominion over the cattle when he sold them, and was no longer in a position to tally them himself or to demand of the new owners the right to tally. Kilbourn's position was no better.

Kilbourn excuses his intervention upon the ground that he, on January 28, 1916, in his sale of the same brands, guaranteed to Wasson 2,600 head of cattle, his interest in this suit being that if less than 2,200 were found, he should at least be made whole to that number. We are not particularly impressed with this suggestion for this reason: In the seven months he was in possession of and handling the cattle upon the range, an opportunity, by actual count and estimation, to verify the guaranty of 2,200 head was afforded him, and it is not likely he would have guaranteed 2,600 head to Wasson without being fully satisfied there were at least as many cattle as appellees had guaranteed to him, especially since the period from June 23, 1915, to January 28, 1916, during which time he was in possession of the cattle was not, as we believe, the season for very prolific increase. Besides, Kilbourn's guaranty to Wasson of 2,600 head of cattle could not be based upon appellees' guaranty to him of 2,200 head, for we must assume that he was a man of ordinary intelligence, business ability, and experience, and, being such, based his guaranty upon his own

first-hand information. But, be that as it may—and we only suggest it for the light it throws on the question of waiver—we think when appellants, who alone were authorized to tally the cattle, disposed of them and thereby put it beyond their power to have the tally made, they waived the right to have a tally or thereafter to question the guaranty. The tally, under the agreement, was to be made at the expense of the appellants, and, if they had become satisfied with the guaranty, would have been but a useless expenditure of money, and it is not improbable the appellants so concluded.

We recognize that the question of waiver is ordinarily one of mixed law and fact, but where the facts are all conceded, or where they compel but one conclusion or inference, we do not understand there is a controversion of fact requiring a jury trial. Here the facts are agreed, and it is the duty of the court to determine the law therefrom. 40 Cyc. 270.

As the cross-complaints are based upon the alleged shortage in the guaranty, and it appearing that no tally was ever taken, and cannot be had because of the conduct of the appellants, it follows that the cross-complaints are without merit.

The judgment is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.